IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NO: _____

| | |
|---|---|
| BRANDON ALAN HARRIS, ) | |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| vs. ) | **Jury Trial Demanded** |
| ) | |
| ROWAN COUNTY SHERIFF'S OFFICE, ) | |
| SHERIFF J. TRAVIS ALLEN, in his ) | |
| individual and official capacities, CAPT. ) | |
| WESLEY SMITH, in his individual and ) | |
| official capacities, LT. KEVIN MYERS, in ) | |
| his individual and official capacities, SGT. ) | |
| WILLIAM BASINGER, in his individual ) | |
| and official capacities, and SGT. KEITH ) | |
| EARNHARDT, in his individual and ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |

Plaintiff Brandon Alan Harris ("Harris"), by and through undersigned counsel,
pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.,
hereby complains against Defendants ROWAN COUNTY SHERIFF'S OFFICE
("Sheriff's Office"), SHERIFF J. TRAVIS ALLEN in his individual and official
capacities ("Sheriff Allen"), CAPT. WESLEY SMITH in his individual and official
capacities ("Smith"), LT. KEVIN MYERS in his individual and official capacities
("Myers"), SGT. WILLIAM BASINGER in his individual and official capacities
("Basinger"), and SGT. KEITH EARNHARDT in his individual and official capacities

("Earnhardt") (collectively, "Defendants"). In support, Plaintiff alleges and says as follows:

PARTIES AND JURISDICTION

1. At all times relevant herein, Plaintiff Brandon Alan Harris has been a citizen and resident of Thomasville, North Carolina. At all times relevant herein, Harris was employed by Defendant Sheriff's Office and met the definition of an "employee" and/or "eligible employee" under all applicable statutes.

2. Defendant Rowan County Sheriff's Office is a legal entity recognized in Chapter 17E of the North Carolina General Statutes and other laws of the State of North Carolina, and is currently superintended by Sheriff J. Travis Allen. The physical address of the Sheriff's Office is 232 N Main Street, Salisbury, N.C. 28144. At all times relevant herein, Defendant Sheriff's Office met the definition of "employer" of Plaintiff Harris under all applicable statutes.

3. At all times relevant herein, Defendant J. Travis Allen is the duly elected Sheriff of Rowan County, North Carolina, an office created pursuant to Article VII, Sec. 2 of the North Carolina Constitution and Chapter 162 of the North Carolina General Statutes and other laws of the State of North Carolina. At all times relevant herein on information and belief, Defendant Allen has been a resident and citizen of Rowan County, North Carolina. At all relevant times herein, Allen met the definition of "employer" of Plaintiff Harris under all applicable statutes.

2

4. At all times relevant herein on information and belief, Defendant Wesley Smith has been a citizen and resident of Rowan County, North Carolina. At all times relevant herein, Smith has been employed by Defendant Sheriff's Office as a Sergeant and, subsequently, as a Captain. At all relevant times, Smith met the definition of "employer" of Plaintiff Harris under all applicable statutes.

5. At all times relevant herein on information and belief, Defendant Kevin Myers has been a citizen and resident of Rowan County, North Carolina. At all relevant times herein, Myers was employed by Defendant Sheriff's Office as a Lieutenant. At all relevant times herein, Myers met the definition of "employer" of Plaintiff Harris under all applicable statutes.

6. At all times relevant herein on information and belief, Defendant William Basinger has been a citizen and resident of Rowan County, North Carolina. At all times relevant herein, Basinger has been employed by Defendant Sheriff's Office as a Sergeant. At all times relevant herein, Basinger met the definition of "employer" of Plaintiff Harris under all applicable statutes.

7. At all times relevant herein on information and belief, Defendant Keith Earnhardt has been a citizen and resident of Rowan County, North Carolina. At all times relevant herein, Earnhardt has been employed by Defendant Sheriff's Office as a Sergeant. At all times relevant herein, Earnhardt met the definition of "employer" of Plaintiff Harris under all applicable statutes.

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1342 as this action involves federal questions regarding the Plaintiff's rights under the FMLA.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because, on information and belief, all Defendants reside in Rowan County and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices herein, occurred in this district.

10. Plaintiff has suffered and will continue to suffer irreparable harm without the relief requested herein.

GENERAL ALLEGATIONS

11. From on or about July 19, 2020, to on or about August 11, 2023, Harris was employed as a full-time employee by the Sheriff's Office.

12. Harris was initially employed by the Sheriff's Office as a detention officer, but was soon transferred to be to a patrol deputy, effectively a promotion. Patrol officers are assigned Sheriff's Office vehicles. Most new employees of the Sheriff's Office initially start their employment at the detention center.

13. On information and belief, Defendant Sheriff's Office has employed, and continues to employ, fifty or more persons at, or within a seventy-five mile radius of the location where Harris worked.

14. From on or about July 19, 2020, to December 1, 2022, Myers and Smith were the supervisors of Harris within the Sheriff's Office.

4

15. From December 1, 2022, to on or about June 6, 2023, Basinger was Harris's immediate supervisor within the Sheriff's Office.

16. On information and belief, from on or about June 6, 2023, to on or about August 11, 2023, Harris's immediate supervisor was Earnhardt.

17. On information and belief, Defendants had the authority to discipline Plaintiff, direct his work activities, assign his job responsibilities and monitor his performance.

18. Harris's son has been diagnosed with various conditions such as ADHD and bipolar disorder.

19. Harris's son's conduct included, among other things, threatening suicide and fabricating that he was both the victim and perpetrator of sexual assaults.

20. Harris's son's conduct resulted in interventions by the Thomasville, N.C., Police Department and school officials.

21. Because Harris's son continued to threaten suicide around the time of Harris's field training, which began in August 2020, Harris was advised by social services officials to make all weapons in their house inaccessible to the son, including his service weapon.

22. During Harris's field training, he occasionally forgot to bring his service weapon from the safe at home and he would have to return home to retrieve it.

23. Harris was issued a verbal warning by then-Sergeant Smith for this issue and Harris signed an acknowledgement.

5

24. Smith was aware at this time of Harris's difficult situation at home with his son.

25. In December 2020, Harris received the Sheriff's Star Award (Medal of Valor).

26. In or around March 2022, the situation with Harris's son deteriorated to such an extent that Harris's wife took FMLA to attend to their son's needs.

27. The situation with Harris's son, including the fact that Harris's wife had taken FMLA leave, was well known in the Sheriff's Office, including by Harris's various supervisors.

28. In October 2022, Harris's son was sent to a military boarding school.

29. As a patrol officer, at the end of each month, Harris and other patrol officers turn in "monthly stats" as to arrests, number of warrants served, service calls, and the like.

30. In October 2022, as a patrol officer, Harris's monthly stats were low because he only took service calls and did not have any reports to turn in to the Sheriff's Office. Harris did not receive any criticism or counseling by his superiors in the months immediately following October 2022 because of his low monthly stats in that month.

31. In early 2023, Harris became mentally depressed, largely related to his son's disruptive behavior.

32. In March 2023, Harris's son graduated from military school and the son returned home, at which time the son's disruptive conduct in the Harris household resumed.

6

33. In May 2023, Harris was driving in a family car with his son and they got into an accident, and the vehicle was declared a total loss. The loss of this family vehicle meant that Harris and his wife were left with only one personal vehicle in the family.

34. Harris's superiors at the Sheriff's Office knew of the accident and the loss of the family vehicle.

35. On May 23, 2023, Harris first called COPLINE, a non-profit hotline dedicated to serving law enforcement officers who are dealing with various stressors encountered both on and off the job.

36. Harris called COPLINE on May 23, 2023, as a support resource for his depression.

37. On May 26, 2023, Harris met with Sergeant Basinger to review Harris's Annual Employee Performance Evaluation.

38. Prior to entering the meeting with Basinger, Harris passed the Sheriff's Office new memorial wall for the first time since its completion.

39. Harris stated to Basinger that he (Harris) saw the name of a former supervisor, William Marsh, on the memorial wall and that it made him think of a lot of current emotional issues, including stress and depression, that he (Harris) had been dealing with and that it made him wonder "if it was all worth it."

40. Basinger told Harris that he too had colleagues on that wall and that it made him (Basinger) wonder if working at the Sheriff's Office was worth it because

7

of the stress of the job combined with things that sometimes happen in one's personal life.

41. Harris then told Basinger that it was funny he (Basinger) just said that, because he (Harris) had recently called COPLINE because he had been going through a "rough patch" and that the hotline counselor said that Harris might need to take some time off to achieve balance in his life and to get his head back in the game.

42. On information and belief, Basinger understood that Harris's comment about taking time off would entail Harris using FMLA leave in the near future.

43. Basinger told Harris that he (Basinger) had his back and that he was there for Harris if he ever needed anything.

44. Basinger and Harris reviewed Harris's performance evaluation, and both signed it at the end of the meeting.

45. Of the eight (8) Core Competencies listed on Harris's Annual Employee Performance Evaluation, Harris received a rating of "Meets most expectations/needs improvement" in three categories and "Meets expectations" in five categories.

46. At the bottom of the evaluation, Chief Deputy Jason Owens handwrote: "Great Job! Thanks for all the hard work!"

47. On information and belief, after Basinger and Harris met to review Harris's Annual Employee Performance Evaluation, Basinger informed Defendants of Harris's depression and likely use of FMLA leave in the near future.

8

48. Prior to Harris informing Basinger that he had been going through a "rough patch" in life, Harris had been employed by the Sheriff's Office for more than twelve (12) months and had worked more than 1,250 hours for the Sheriff's Office during the previous twelve-month period.

49. By staying on the clock past the formal end of his shift and by coming in early and on off days, Harris accumulated over 400 hours of overtime in less than four years with the Sheriff's Office.

50. On June 6, 2023, Harris was informed of a transfer back to work the third shift at the detention center in a meeting with Smith, Myers, and Basinger, effectively a demotion for Harris. For Harris, the transfer from patrol to the detention center would have entailed the loss of the use of a Sheriff's Office vehicle.

51. At the June 6, 2023 meeting, Harris's superiors refused to provide a reason to Harris for this abrupt transfer and demotion.

52. On information and belief, Defendants changed Harris's job duties on June 6, 2023, because of Harris's depression which Basinger learned of on May 26, 2023.

53. On information and belief, Defendants knew that the change in Harris's job duties would be a catalyst for Harris to resign from his job with Sheriff's Office because, since Harris's family was down to one personal vehicle after the May 2023 accident, it would be hard for Harris to get back and forth to the detention

center job with Harris's wife using the one remaining car to get to and from her job.

54. Also on June 6, 2023, Harris contacted COPLINE again and the hotline resource suggested to Harris that he take FMLA leave to deal with his personal family issues and the resulting situational depression.

55. Later on June 6, 2023, Harris informed Detention Center Sergeant Earnhardt that he was going on sick leave immediately while he prepared a written request for FMLA leave in accordance with Sheriff's Office policies.

56. The extended leave time pursuant to the FMLA would give Harris the time to deal with his personal situation and his situational depression before addressing the job transfer to third-shift jail guard.

57. On or about June 9, 2023, Harris submitted a written request for FMLA leave to the Sheriff's Office and the request was approved by the Sheriff's Office HR on June 23, 2023.

58. On June 26, 2023, Harris met with a physician who diagnosed Harris with situational depression and prescribed Wellbutrin for the same.

59. On July 10, 2023, Harris submitted his FMLA certification form to the Sheriff's Office HR, which contained his physician's diagnosis that Harris was struggling with depressed mood, sleep disturbance, extreme stress, excessive worry, avoidance, and fatigue.

60. Except for Smith's verbal warning to Harris about leaving his service weapon at home, which Harris acknowledged via signature, Harris had no other formal discipline during his employment with the Sheriff's Office.

61. However, as can be expected, Harris periodically received feedback and criticism from his superiors.

62. In August 2023, Harris was cleared to return to duty as a patrol officer, but the Sheriff's Office insisted that Harris return as a third-shift detention center officer.

63. On August 18, 2023, Harris submitted his resignation after his exhaustion of his sick leave.

**FIRST CAUSE OF ACTION**
**(Retaliation in Violation of the FMLA)**
**(Against All Defendants)**

64. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

65. At all times relevant herein, Harris was an "eligible employee" within the meaning of the FMLA.

66. At all times relevant herein, Defendants were and are "covered employers" within the meaning of the FMLA.

67. Defendants violated the FMLA by unlawfully retaliating against Plaintiff Harris for exercising rights protected by the FMLA by, inter alia, transferring and effectively demoting Harris in retaliation for Harris's informing Basinger that he (Harris) was depressed, experiencing a rough patch in his life, and that

11

he would need to take time off to achieve balance in his life and to get his head back in the game.

68. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

WHEREFORE, Plaintiff prays unto the Court as follows:

1. that the Court grant Plaintiff an award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

2. that Plaintiff be reimbursed for all his court costs, including attorney's fees;

3. that Plaintiff be granted a trial by jury on all triable issues; and

4. that the Court grant Plaintiff such other and further relief as the Court deems just and proper.

This the 5th day of June, 2025.

BAILEY & DIXON, LLP

By: /s/ Richard A. Paschal
Richard A. Paschal
N.C. State Bar No. 27300
434 Fayetteville St., Suite 2500
Raleigh, NC 27601
Telephone: (919) 828-0731
Fax: (919) 828-6592
Email: rpaschal@bdixon.com

*Attorneys for Plaintiff*

12